ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW ALAN RUSHING | Case No.<br><br>3-19CR-469-S |

## INFORMATION

The United States Attorney Charges:

At all times material to the information:

### Introduction

1. The National Highway Traffic Safety Administration (NHTSA) was a federal agency authorized by federal law to award grant funds to state governments to improve public safety. NHTSA oversaw federal highway funds that go to state governments to improve highway safety programs and to financially support state and local law enforcement agencies. On or about August 10, 2018, NHTSA entered an agreement with the Texas Department of Transportation (TXDOT) to fund federal grants for 2019. On or about January 10, 2019, NHTSA approved a reimbursement voucher from TXDOT and used federal grant funds to fund the Comprehensive STEP Traffic Grant.

2. On December 14, 2018, TXDOT used the above-referenced federal grant funds to award a Comprehensive STEP Traffic Grant of $1,115,540 to the City of Dallas, Texas. The grant period was from October 1, 2018 through September 30, 2019.

Information—Page 1 of 6

TXDOT awarded $891,260 of the above-referenced TXDOT grant funds to the City of Dallas, Texas. The grant was used to fund overtime pay to officers of the Dallas Police Department (DPD) to insure better enforcement of traffic laws in the City of Dallas, Texas.

3. The intended purpose of the above-referenced federal grant funds was to increase effective enforcement and adjudication of traffic safety-related laws relating to speeding and alcohol/drug impaired drivers in order to reduce fatal and serious-injury accidents. The grants were also intended to reduce the number of fatal and serious-injury accidents due to unrestrained or improperly restrained vehicle occupants.

4. During the period from October 2018 through July 2019, DPD used federal grant funds to pay overtime expenses to approximately 27 officers each month who worked overtime to enforce traffic laws in Dallas, Texas. Total federal grant funds spent for DPD officer overtime pay during this period was $540,592.

5. During the period from October 2018 through July 2019, in order to collect overtime pay from federal grant funds, all DPD officers were required to sign and submit a document entitled "Officer's Daily Grant Activity Report" (report). The following statement appeared on each report, right below the signature line of each DPD officer who signed the report: "I understand that this information is being submitted to support a claim against a federally-funded grant program. False statements on this form may be prosecutable under 18 U.S.C. 1001. The information on this form is true, correct, and complete to the best of my knowledge and ability." A false statement on this report was

a false statement within the jurisdiction of a federal agency, the NHTSA, as administered by the Texas Department of Transportation and the Dallas Police Department.

6. Public confidence in the integrity of the DPD was essential for the DPD to earn and enjoy community support. The DPD must have widespread community support in order to effectively and safely perform their law enforcement mission. In order to promote public confidence in the integrity of the DPD, it was critical that all DPD officers be completely honest and always submit truthful reports in the course of their official duties.

7. When DPD officers received overtime pay from federal grant funds, these officers also had a legal and ethical obligation to submit true and accurate reports in connection with their overtime work. All DPD officers were responsible to protect federal grant funds from any type of unlawful or fraudulent disbursement.

8. In order to increase the probability that the State of Texas and the City of Dallas would be awarded future federal grant funds, it was also absolutely vital that the State of Texas, City of Dallas and the Dallas Police Department honestly disburse and safeguard all federal grant funds.

9. During the period from about February 18, 2019 through May 14, 2019, defendant **Rushing** received overtime pay as a result of his work as part of the Comprehensive STEP traffic grant. During this approximate three month period, **Rushing** worked about 41 four hour shifts and logged a total of about 160 overtime hours. While being paid with federal grant funds, **Rushing** wrote a total of about 569 traffic citations.

10.     During this period, **Rushing** wrote at least 29 false and fraudulent citations. **Rushing** created false citations by creating and submitting citations for persons and events that did not exist.   On several occasions, **Rushing** created false citations by altering the violator's true identity (the order of their first, middle, or last name, their date of birth, etc.) in order to create a false identity.   **Rushing** submitted several false reports which listed one or more false citations.   In his false report, **Rushing** concealed that he at times used a "fictitious person" as the traffic offender when he wrote up one or more false citations.   When **Rushing** submitted false citations, arrest warrants were sometimes unlawfully issued.   **Rushing** also submitted false citations to drivers after they departed the location of the traffic stop.   These persons were often unaware that additional false and fraudulent citations had been written in their name.

11.     **Rushing** also created false citations for moving violations when in fact the vehicles he cited were not moving on public roads as required.   The vehicles cited were sometimes unattended, parked, and/or inoperable (one vehicle had not moved in approximately 11 years).   In a legitimate traffic stop, the driver was present and normally provided needed personal information.   However, **Rushing** sometimes wrote false citations and gave tickets to drivers who were not present.   In these situations, since the driver was absent, **Rushing** unlawfully accessed law enforcement databases to obtain the information necessary to write false citations.   **Rushing** also frequently forged a violator's signature and used phony dates of birth in order to complete these false citations.

## Count One
## False Statement
### (Violation of 18 U.S.C. § 1001)

13.   The United States Attorney hereby adopts, realleges and incorporates by reference herein the allegations contained in the Introduction to this Information as if fully set forth herein.

14.   That on or about May 6, 2019, defendant **Matthew Alan Rushing** did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by signing an "Officer's Daily Grant Activity Report, FY 2018-19" which contained a false statement/report which included false and fraudulent traffic citations during the reporting period covered by this document. **Rushing** submitted this report in order to fraudulently collect his overtime pay funded by federal National Highway Traffic Safety Administration (NHTSA) grant funds.   Some of the citations listed on this report were false because one or more of the citations listed on the report were based on fictional events and fictitious persons.   **Rushing** made this false statement regarding a matter within the jurisdiction of a federal executive branch agency, the National Highway Traffic Safety Administration (NHTSA).   The statement was false, because as **Rushing** then and there knew, one or more of the citations listed on this activity report were false and fraudulent in that the person "charged" on the citation was fictitious and the traffic offense never took place.

In violation of 18 U.S.C. § 1001.

**--- NOTHING FURTHER ON THIS PAGE ---**

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ David L. Jarvis

DAVID L. JARVIS
Assistant United States Attorney
Texas Bar No. 10585500
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8729
Facsimile: 214-659-8812
david.jarvis@usdoj.gov